John D. Gibbs, et al., Plaintiffs-Appellants, v. Harmony Systems, Inc., et al., Defendants, Standard Finance Corporation and Overland Bond and Investment Corporation, Defendants-Appellees.

Gen. No. 48,863.

First District, First Division.

October 7, 1963.

Mark J. Satter, of Chicago, for appellants.

Norman H. Nachman and William Levine, of Chicago, for appellee, Standard Finance Corporation, and Cohen, Fiffer & D'Angelo, of Chicago, Brady, Tyrell & Bruce of Milwaukee, Wisconsin (Oscar O. D'Angelo and Thomas J. Donnelly, Jr., of counsel), for appellee, Overland Bond & Investment Corporation.

MR. JUSTICE BURMAN delivered the opinion of the court.

This is an appeal from a Circuit Court order dismissing the second amended complaint filed by 197 plaintiffs who filed a joint action seeking rescission and cancellation of certain promissory notes and con-

tracts signed by them and an injunction restraining enforcement of payment by judgment, garnishment, or wage assignments. The plaintiffs elected to stand by their complaint.

The original complaint was filed by 17 plaintiffs against Harmony Systems, Inc., U. S. Beverage Dispensing Company, G. M. Vending Corporation as sellers of automatic vending machines, two officers of the defendant companies, two salesmen and two finance companies. The first amended complaint was filed by 223 plaintiffs and named as additional defendants were American Vendex Corporation, Buffet, Inc., and another officer of one of the vending machine companies. The second amended complaint, which is the pleading in controversy here, is divided into two causes of action, one group consisting of 133 plaintiffs against defendants Harmony Systems, Inc., G. M. Vending Corporation, Buffet, Inc., Oscar Stone and Standard Finance Corporation. The other group consisting of 64 plaintiffs against U. S. Beverage Dispensing Co., Ventronics, Inc., American Vendex Corporation, Convenco, Inc. and Overland Bond and Investment Corporation. The only defendants served with summons were the two finance companies, namely, the Standard Finance Company and Overland Bond and Investment Company and they will hereinafter be referred to as Finance Companies. Thus we have before us two different groups of plaintiffs each seeking relief against different groups of defendants in one lawsuit.

The Finance Companies separately moved to dismiss the complaint for the following specified reasons:

That the complaint does not state a cause of action in equity and that each of plaintiffs have an adequate remedy at law; that the complaint is multifarious and the alleged separate causes of action could not

39

properly be consolidated in one complaint; that the complaint improperly joins the parties plaintiff in one action since it sets forth separate and distinct causes of action for each of them, which arose out of separate transactions at different times and places with various defendants, and which are based on wholly different and unrelated fact situations, and that the causes of action of each of the plaintiffs would require separate proof of representations made to him.

The Complaint, as heretofore mentioned, sets forth two causes of action, one against various vending companies and the finance company they dealt with and the other against different vending companies and a different finance company they dealt with. Each cause of action is divided into two counts, one in law and one in equity. Count I labeled as the law count is substantially the same in each of the two causes. Briefly, it recites that the plaintiffs who were gainfully employed individuals were fraudulently solicited by the defendant vending machine companies by means of ads in the Metropolitan and Community Newspapers and by "telephone canvass" for part time employment. That after gaining entrance to the homes of plaintiffs the agents of these companies and the Finance Companies were instructed to and did call late in an evening, did remain for two or three hours, did ingratiate themselves into the confidence of the plaintiffs, and induced them to execute and to sign conditional sales agreements for the purchase of coffee vending machines; that the defendant vending machine companies in a conspiracy schemed together to get the signatures of plaintiffs on the documents and never intended to offer part time employment; that the statements made as to employment, earnings, salary and profit sharing plans by the vending machine companies were false and in reliance on these statements each of the plaintiffs executed conditional sales agree-

ments and the attached "Principal Promissory Notes" and "Wage Assignments"; that shortly after the execution of the documents each of the plaintiffs were advised by the vending machine companies with whom they entered into agreement that a machine had been installed for their benefit at a certain location, and plaintiffs were furnished a key which would permit access to the said machine for service; that the vending machine companies undertook to maintain control over placement, supply and maintenance, but have since closed their doors, and have abandoned completely all business activity; that the plaintiffs upon learning of the fraud demanded the return of all documents executed by them and notified the defendants of their election to rescind the contracts heretofore rendered and tendered back the vending machines.

The Complaint further alleges that the Finance Companies hold all the documents signed by plaintiffs and have made demand for payments; that plaintiffs are not indebted to the Finance Companies; that the documents are not valid retail contracts of sale, and the notes are not negotiable notes and the Finance Companies are not holders in due course; that the plaintiffs informed the Finance Companies of the details of fraudulent conduct of the vending machine company defendants, but were told they were obligated to make payments whether they liked the machine or not and would garnishee their wages unless payments were made; that "Standard" did on numerous occasions deliver supplies to the vending machines and selected locations for the machines; that "Overland" maintained an office in the premises of defendant U. S. Beverage Dispensing Company and one of its officers stated they were a partner in that business; that complaints were made to "Overland" and that Overland knew of the fraudulent transactions, but continues to claim ownership as a holder in due course;

41

that Robert White, an officer of "Overland" participated in the sale of machines involved and induced plaintiffs to execute additional documents. That plaintiffs are informed and believe and state upon information that the vending machine companies and the finance companies are owned and controlled by persons unknown to plaintiffs and whose interests should be disclosed. Wherefor the plaintiffs prayed that all the documents executed by plaintiffs be null and void etc. This count although designated "law" sounds in equity inasmuch as it seeks rescission and cancellation of contracts, with claim for damages for fraud and deceit.

In Count II, under the heading of Chancery, the matters in Count I are realleged. In addition plaintiffs charge that the finance companies threatened assignment of wages, confession of judgment and garnishment of wages and that each of the plaintiffs are gainfully employed and subject to immediate loss of employment; that their employment is a property right which is threatened and that they are without adequate remedy at law for the protection of their property right in employment. The plaintiffs prayed that the defendants be enjoined from serving any notice of wage assignment or taking any action by way of confession of judgment or wage deduction or any proceeding for collection of monies.

The Court sustained the respective motions of defendants Finance Companies and dismissed the second amended complaint with prejudice. The plaintiffs did not request permission to amend, but elected to stand on the second amended complaint and the Chancellor found there was no just reason for delaying appeal.

The question raised by this appeal is whether the two causes of action joined together in one complaint state a cause of action and whether the complaint

basically involves a common question of fact and law as would justify the Chancellor to permit the multiple plaintiffs and multiple defendants to be united in one complaint.

■■ One of the grounds urged in the motion to dismiss was that the bill is multifarious. "To lay down any rule universally applicable as to multifariousness, or to say what constitutes multifariousness as an abstract proposition, is, under the authorities, utterly impossible." First Nat. Bank of Lincoln v. Starkey, 268 Ill 22, 108 NE 695. The court went on to say: "[t]here is no settled and inflexible rule as to deciding whether pleading is multifarious. The question is one which must be determined largely by the circumstances of each particular case . . . [b]y multifariousness, says a noted author, is meant improperly joining in one bill distinct and independent matters and thereby confounding them."

The plaintiffs contend that multiple plaintiffs and defendants have been properly joined in accordance with Illinois Revised Statutes 1961, c 110, §§ 23 & 24, and that it would impose an insurmountable burden upon plaintiffs if each plaintiff was compelled to file an individual lawsuit.

In Opal v. Material Service Corp., 9 Ill App2d 433, 133 NE2d 733, Justice Friend speaking for the court, discusses the general question of joinder, including most of the cases cited by plaintiffs on that question as well as several Law Review Articles on the subject. Justice Friend concluded that an "[a]nalysis of the cases discloses the wide play for the court's judgment permitted by the common-question and same transaction clauses of the statute. Neither phrase has been or can be exactly defined, and whether a court holds that multiple claims involve common questions of law or of fact will depend upon the relative im-

portance which the court attaches to the various issues in a case." (448)

The plaintiffs strongly rely on the case of Akely v. Kinnicutt, 238 NY 466, 144 NE 682. In that case 193 plaintiffs joined in a complaint alleging that the defendants had fraudulently induced each of them to purchase stock at a price much greater than its real value. Although the plaintiffs bought the stocks individually they claimed that they were all induced to purchase the shares by a public prospectus which misrepresented the assets and liabilities of the company. The New York Court of Appeals held that the complaint involved the common question of law and fact required by the New York statute which is similar to our statute.

The defendants on the other hand refer us to the Illinois case of Gombi v. Taylor Washing Machine Co., 290 Ill App 53, 7 NE2d 929, which they claim strongly resembles the facts in the case at bar. There, 21 plaintiffs joined in one complaint claiming that their installment purchases of defendants' washing machines had been induced by fraudulent representations made to each of them, separately, by defendants' salesmen. In the opinion reference was made to the New York case. In reversing the trial court, the Appellate Court referred to Crawford-Adsit Co. v. Fordyce, 100 Ill App 362, which stated, "In the present case, it appears that the representations and promises to the several complainants, as well as the contracts, were several and distinct. It does not appear that the representations were by circular or prospectus, of which each complainant received a copy, while apparently the representations and promises were made to the several subscribers at separate times." Thus, the basic distinction between Gombi and Akely is, that in the latter case the material misrepresentation can be shown by evidence common to all plaintiffs while in Gombi each plaintiff must separately prove the particular oral

44

misrepresentation which induced his own individual transaction.

In Weigend v. Hulsh, 315 Ill App 116, 42 NE2d 146, the Appellate Court relying on Akely, permitted five plaintiffs to join in one complaint against two defendants. In that case the plaintiffs alleged that the defendants placed advertisements in the Chicago newspapers under the title, "Help wanted with investment" and induced the plaintiffs by means of oral misrepresentations and false statements in pursuance of a fraudulent conspiracy to enter into separate sales contracts.

■ As Justice Friend said in Opal, the Weigend and Gombi cases are not easy to reconcile on the facts. Whether the Weigend case substantially overrules the long standing doctrine of the Gombi case is a question which this Court may eventually have presented to it; that question is not however reached in the fact situation at bar. We must keep in mind that the instant lawsuit involves only the Finance Companies as defendants and not the sellers as was the case in all of the aforementioned situations. The legal principles emanating from this distinction are crucial. The plaintiffs must state facts showing that the defendant Finance Companies were not bona fide purchasers for value in order to bring them within the "conspiracy" doctrine of the Akely and Weigend cases. The plaintiffs have failed to do this.

■ It is not claimed that the defendant Finance Companies placed the ads in the newspapers or that the "sellers" assigned the notes to finance companies which were operated by them. In Van Kleeck v. Vente, 340 Ill App 395, 191 NE2d 909, it was alleged that the principal defendant operated a dance studio and that the notes from defrauded studio customers were assigned to a finance company which was also operated by the principal defendant. That is not the case here. There is an allegation that the vending companies and

45

the Finance Company defendants are owned by the same persons. This allegation is made upon information and belief, but no facts are stated upon which the belief is founded. In Rezek v. Fishman, 340 Ill App 638, 92 NE2d 359 it was said, "There are no facts stated upon which plaintiffs' beliefs are founded and allegations of fraud upon information and belief cannot therefore be sustained." The plaintiffs have also made various other allegations of participation and collusion on the part of the Finance Companies in the allegedly fraudulent scheme. We have carefully read the pleadings upon which the plaintiffs choose to stand and we conclude that these additional allegations are also based upon mere conclusions and are without facts to sustain them. The motion to dismiss admits the facts well pleaded, but not the conclusions of the pleader. Dial v. Dial, 17 Ill2d 537, 162 NE2d 404. The plaintiffs did not exercise their right to depositions in an attempt to get the facts. Economy does not justify confusion in the courts nor manifest unfairness to defendants.

■ In addition to the Complaint being insufficient on its face it is multifarious in that it lumps together two separate causes of action, the first of which is by one group of plaintiffs against a grouping of vending companies and one Finance Company and the second is by an entirely different group of plaintiffs against an entirely different group of vending companies and a different Finance Company there appearing no connection between the two causes of action. Lyons v. 333 North Michigan Ave. Bldg. Corp., 277 Ill App 93. There is nothing in the complaint to connect the Finance Companies with one another. Moreover it appears from the Complaint that some of the plaintiffs continued on with the deals while others did not go on with their purchases. There are so many different factual situations, which are too

numerous to mention, but which would require different legal principles and the decision in one instance cannot possibly be determinative in all other instances as was the case in Village of Melrose Park v. Prairie State Bank, 330 Ill App 18, 69 NE2d 729.

■ The plaintiffs have an adequate remedy at law. The legal remedy of the individual plaintiff will not adversely affect his employment as alleged. The situation that existed at the time of Van Kleeck v. Vente, 340 Ill App 395, 397, 91 NE2d 908 where it was said, "mere receipt of notice by an employer is often sufficient to jeopardize the position of an employee," no longer exists. See amendments to Wage Assignment Law which now appear as §§ 39.2, 39.2a, 39.2b, 39.4, 39.4a, and 39.4b in Chapter 48 of the Illinois Revised Statutes.

In the view which we take of this case it is not necessary to consider the other points raised. We feel a discussion of them will serve no useful purpose.

For the reasons indicated the order of the Circuit Court dismissing the Complaint is affirmed.

Order affirmed.

ENGLISH, PJ and MURPHY, J, concur.